IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

GARRY JONES  
2644 Meadow Hall Drive  
Herndon, Virginia 20171

and

SUZANNA KREBS  
8812 Hunting Lodge Court  
Vienna, Virginia 22182

and

BARBARA COYNE  
P.O. Box 6744  
Miramar Beach, FL 32550

and

ABREHAM ADANE  
4 Manchester Place, Suite #4  
Silver Spring, Maryland 20901

and

JANARDHANA KATTA  
13009 Gershwin Way  
Silver Spring, Maryland 20904

and

ROLANDO MEDINA  
3142 Patrick Henry Drive  
Falls Church, Virginia 22044

and

GOUTAM RAO BAIKADI  
9647 Pullman Place  
Fairfax, Virginia 220301

and

CASE NO.: 1:17cv125 (LMB/JFA)

| | |
|---|---|
| JOGA REDDY RJULA<br>22683 High Haven Terrace<br>Ashburn, Virginia 20148 | *<br>*<br>* |
| and | *<br>*<br>* |
| TERESA ANN KIRKLAND<br>12521 W. Downing Place<br>Brimfield, Illinois 61517 | *<br>*<br>*<br>* |
| and | *<br>* |
| EUGENE MOSELEY<br>3814 Gateway Terrace<br>Burtonsville, Maryland 20866 | *<br>*<br>*<br>* |
| and | *<br>* |
| SREEDEVI BELLAM<br>42337 Guildhall Drive<br>Ashburn, Virginia 20148 | *<br>*<br>*<br>* |
| and | *<br>* |
| MICHAEL THOMAS SCHATTENFIELD<br>5741 Mountville Road<br>Adamstown, Maryland 21710 | *<br>*<br>*<br>* |
| and | *<br>* |
| CHERE VINCENT<br>11270 Lady Lane Loop, Suite 101<br>Manassas, Virginia 20109 | *<br>*<br>*<br>* |
| and | *<br>* |
| JANICE MILLER<br>546 Jersey Street<br>San Francisco, California 94114 | *<br>*<br>*<br>* |
| Plaintiffs, | *<br>* |
| v. | *<br>* |
| ENZIIME, LLC<br>8270 Greensboro Drive, Suite 850 | *<br>* |

McLean, Virginia, 22102

SERVE: The Corporation Trust Company
Corporation Trust Center
12009 Orange Street
Wilmington, Delaware 19801

and

VITALSPRING TECHNOLOGIES, INC.
8270 Greensboro Drive, Suite 850
McLean, Virginia 22102

SERVE: Nydam Law Practice, PC
2911 Hunter Mill Road, Suite 301
Oakton, Virginia 22124

and

YONA HEALTH SYSTEMS, LLC
1524-C Springhill Road
McLean, Virginia 22102

SERVE: Corporation Service Company
Bank of America Center, 16th Floor
Richmond, Virginia 23219

and

SPEEDHAR POTARAZU
10904 Lamplighter Lane
Potomac, Maryland 20854

and

KEVIN SHERLOCK
6512 Kells Court
Clarksville, Maryland 21029

   Defendants.

## COMPLAINT

  COME NOW the Plaintiffs: i. Garry Jones ("Jones"); ii. Suzanna Krebs ("Krebs"); iii.

Barbara Coyne ("Coyne"); iv. Abreham Adane ("Adane"); v. Janardhana Katta ("Katta"); vi.

3

Rolando Medina ("Medina"); vii. Goutam Rao Baikadi ("Baikadi"); viii. Joga Reddy Rjula ("Rjula"); ix. Teresa Ann Kirkland ("Kirkland"); x. Eugene Moseley ("Moseley"); xi. Sreedevi Bellam ("Bellam"); xii. Michael Thomas Schattenfield ("Schattenfield"); xiii. Chere Vincent; and xiv. Janice Miller ("Miller") (together, "Plaintiffs") hereby submit their Complaint against Defendants: i. Enziime, LLC ("Enziime"); ii. Vitalspring Technologies, Inc. ("Vitalspring"); iii. Yona Health Systems, LLC ("Yona"); iv. Speedhar Potarazu ("Potarazu"); and v. Kevin Sherlock ("Sherlock") (together, "Defendants') to recover unpaid wages and damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); and for other damages as set forth below.

## PARTIES AND JURISDICTION

1. By acting as the named plaintiffs in this action, Plaintiffs do hereby affirm their consent to participate as plaintiffs in an action seeking unpaid wages and damages under the FLSA.

2. In their FLSA claim, Plaintiffs seek to collect unpaid wages, jointly and severally, against all Defendants as Plaintiffs' "employers" as the term is defined under the FLSA expansively to include direct entity and individual employers, joint employers, enterprise employers, and successor employers.

3. Prior to 2015, Plaintiffs were employed by Vitalspring, a corporation based in McLean, Virginia. Thereafter, in or about 2015, Vitalspring changed corporate names to Enziime but continued to employ Plaintiffs and perform identical work under identical management and ownership out of its same corporate office in McLean, Virginia.

4. In or about October 2016 or early November 2016, Enziime terminated the employment of Plaintiffs and ceased performing business operations under the name Enziime.

4

5. In the late portion of 2016, it became apparent that Enziime would no longer be able to continue to operate under Potarazu, its Chief Executive Officer and President. At that time, Potarazu was facing criminal prosecution for a variety of fraudulent activities and Enziime itself was the subject to a variety of lawsuits and threatened lawsuits from vendors and other creditors to whom Enziime and/or Potarazu owed substantial sums.

6. In or about November 2016, Yona formed as a business entity in the Commonwealth of Virginia and purchased the assets held by Enziime. Thereafter, Yona performed nearly identical business operations to Vitalspring and Enziime for the same clients and clientele as Enziime.

7. Since commencing operations, Yona has performed work on Enziime's most important and lucrative business contracts and operated under the management of much of Enziime's senior management including, but not limited to Paul Bayless, Vice President of Operations; Neville Chambers, Vice President of Product Innovation; Prasad Kalvakota, Vice President of Information Technology; Sanjeevinathan Gopal, Microstrategy Developer; and Hari Raman, Manager of Operations.

8. Since commencing operations, Yona has operated performing nearly identical business services as Enziime to identical current and potential clients and using identical or nearly identical proprietary technology.

9. Yona is not a separate and distinct entity but, instead, is a continuation of Vitalspring and Enziime and therefore is a legal successor to Vitalspring and Enziime that is itself liable for the debts of Vitalspring and Enziime.

10. The asset sale by Enziime to Yona was fraudulent in nature because it was only for the purpose of attempting to avoid and bypass creditors including Plaintiffs.

11. At all times during Plaintiffs' employment, Potarazu was the Chief Executive Officer of Vitalspring and Enziime and Sherlock was the Chief Operating Officer of Vitalspring and Enziime.

12. At all times during Plaintiffs' employment, both Potarazu and Sherlock had the power to hire, fire, suspend, and otherwise discipline Plaintiffs.

13. At all times during Plaintiffs' employment, both Potarazu and Sherlock supervised Plaintiffs' work duties to ensure Plaintiffs' work was of sufficient quality.

14. At all times during Plaintiffs' employment, both Potarazu and Sherlock set and controlled Plaintiffs' work tasks, including prioritizing what projects and areas of research each Plaintiff should focus their work attention.

15. At all times during Plaintiffs' employment, both Potarazu and Sherlock participated substantially in setting and determining Plaintiffs' rate and method of pay including each, individually, promising and reassuring Plaintiffs that each of the Plaintiffs would received all of their salaries and other compensation when compensation theretofor was erratic, delinquent, or not received by Plaintiffs at all.

16. At all times relevant, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

17. At all times relevant, Defendants' gross revenue exceeded $500,000.00 and thus Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

18. At all times relevant, Plaintiffs were each individual employees who, while engaged in their employment duties, handled, sold, and otherwise worked on goods and materials that were moved in or produced for commerce thus each Plaintiff was an individual employee

who was engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

19. Pursuant to the foregoing, each of the Defendants qualified as Plaintiffs' employers for purposes of FLSA.

20. This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

21. Subject matter jurisdiction is invoked under 28 U.S.C. § 1331.

22. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

23. Jones was employed by Defendants as an Account Executive for the period of about June 2011 through about October 2016. Defendants paid Jones as a salaried employee at the annual rate of about $98,000.00. Defendant failed to pay Jones any wages for work duties performed from about July 2016 through October 2016 and, at the end of Jones' employment, failed to pay Jones his earned and accrued paid time off wages. Defendants owe Jones unpaid wages in the total amount of about $30,000.00.

24. Krebs was employed by Defendants as an Executive Administrative Assistant for the period of about 2003 through about October 2016. Defendants paid Krebs as a salaried employee at the annual rate of about $76,550.00. Defendant failed to pay Krebs any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Krebs' employment, failed to pay Krebs her earned and accrued paid time off wages. Defendants owe Krebs unpaid wages in the total amount of about $20,000.00.

25. Coyne was employed by Defendants as a Senior Healthcare Data Analyst for the

period of about 2003 through about October 2016. Defendants paid Coyne as a salaried employee at the annual rate of about $70,000.00. Defendant failed to pay Coyne any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Coyne's employment, failed to pay Coyne her earned and accrued paid time off wages. Defendants owe Coyne unpaid wages in the total amount of about $20,000.00.

26. Adane was employed by Defendants as a Database ETL Developer for the period of about March 2014 through about October 2016. Defendants paid Adane as a salaried employee at the annual rate of about $73,000.00. Defendants failed to pay Adane any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Adane's employment, failed to pay Adane earned and accrued paid time off wages. Defendants owe Adane unpaid wages in the total of about $20,000.00.

27. Katta was employed by Defendants as a Senior Oracle Database Administrator for the period of about October 2010 through about October 2016. Defendants paid Katta as a salaried employee at the annual rate of about $104,500.00. Defendants failed to pay Katta any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Katta's employment, failed to pay Katta earned and accrued paid time off wages. Defendants owe Katta unpaid wages in the total amount of about $40,000.00.

28. Medina was employed by Defendants as a Reporting Solutions Manager for the period of about January 2010 through about October 2016. Defendants paid Medina as salaried employee at the annual rate of about $108,150.00. Defendants failed to pay Medina any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Medina's employment, failed to pay Medina earned and accrued paid time off wages. Defendants owe Medina unpaid wages in the total amount of about $70,000.00.

29. Baikadi was employed by Defendants as a Director of Data Integration for the period of about July 2016 through about October 2016. Defendants paid Baikadi as a salaried employee at the annual rate of about $127,000.00. Defendants failed to pay Baikadi any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Baikadi's employment, failed to pay Baikadi earned and accrued paid time off wages. Defendants owe Baikadi unpaid wages in the total amount of about $50,000.00.

30. Arjula was employed by Defendants as Senior ETL Developer for the period of about April 2015 through about October 2016. Defendants paid Arjula as a salaried employee at the annual rate of about $110,000.00. Defendants failed to pay Arjula any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Arjula's employment, failed to pay Arjula earned and accrued paid time off wages. Defendants owe Arjula unpaid wages in the total amount of about $25,000.00.

31. Kirkland was employed by Defendants as Director of Financial Solutions for the period of about February 2011 through about October 2016. Defendants paid Kirkland as a salaried employee at the annual rate of about $115,000.00. Defendants failed to pay Kirkland any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Kirkland's employment, failed to pay Kirkland earned and accrued paid time off wags. Defendants owe Kirkland unpaid wages in the total amount of about $50,000.00.

32. Moseley was employed by Defendants as a Data Manager for the period of about October 2008 through about October 2016. Defendants paid Moseley as a salaried employee at the annual rate of about $78,000.00. Defendants failed to pay Moseley any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Moseley's employment, failed to pay Moseley earned and accrued paid time off wages. Defendants owe

Moseley unpaid wages in the total amount of about $25,000.00.

33. Bellam was employed by Defendants as a Microstrategy Developer for the period of about February 2016 through about October 2016. Defendants paid Bellam as a salaried employee the annual rate of about $117,000.00. Defendants failed to pay Bellam any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Bellam's employment, failed to pay Bellam earned and accrued paid time off wages. Defendants owe Bellam unpaid wages in the total amount of about $47,500.00.

34. Schattenfield was employed by Defendants as a Manager of Data Acquisition and Assurance for the period of about February 2016 through about October 2016. Defendants paid Schattenfield as a salaried employee at the annual rate of about $91,000.00. Defendants failed to pay Schattenfield any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Schattenfield's employment, failed to pay Schattenfield earned and accrued paid time off wages. Defendants owe Schattenfield unpaid wages in the total amount of about $25,000.00.

35. Vincent was employed by Defendants as Project and Implementation Manager for the period of about August 2010 through about October 2016. Defendants paid Vincent as a salaried employee at the annual rate of about $72,000.00. Defendants failed to pay Vincent any wages for work duties performed from about July 2016 through about October 2016 and, at the end of Vincent's employment, failed to pay Vincent earned and accrued paid time off wages. Defendants owe Vincent unpaid wages in the total amount of about $20,000.00.

36. Miller was employed by Defendants as a Senior Account Executive for the period of about December 2011 through about October 2016. Defendants paid Miller as a salaried employee at the annual rate of about $115,000.00. Defendants failed to pay Miller any wages for

work duties performed from about July 2016 through about October 2016 and, at the end of Miller's employment, failed to pay Miller earned and accrued paid time off wages. Defendants owe Miller unpaid wages in the total amount of about $60,000.00.

37. At the commencement of each Plaintiff's employment, Defendants and each Plaintiff negotiated and assented to compensation agreements whereby each Plaintiff agreed to perform employment services in exchange for a pre-set annual salary rate, earned and accrued paid time off, medical benefits, retirement and 401K contributions by Defendants, mutually agreed upon stock options, and other individually negotiated employment benefits.

38. Each Plaintiff performed, in a workmanlike manner, all employment duties required by Defendants for which all forms of agreed upon compensation was due and owing by Defendants to each Plaintiff.

39. Without legal excuse or justification, Defendants failed to pay Plaintiffs earned salary wages and paid time off wages as set forth above, failed to make agreed upon contributions to Plaintiffs' retirement plans, failed to pay towards medical premium payments, and failed to pay Plaintiffs agreed upon stock options.

40. While employed, Defendants deducted from Plaintiffs' wages all payroll taxes in the amounts that Defendants were obligated to pay to the United States Treasury. While employed, Defendants withheld the wages from Plaintiffs' wages but did not pay the money to the United States Treasury. Instead, Defendants kept the money for Defendants' own use and benefit.

41. As noted above, for the period of about July 2016 through about October 2016, Defendants paid Plaintiffs no wages. During this period, Plaintiffs typically worked between 35-40 hours per week and Defendants had knowledge of all hours Plaintiffs worked and directed

Plaintiffs to work all hours as herein alleged.

42. For the period of about July 2016 through about October 2016, Defendants had knowledge that Defendants owed Plaintiffs wages in amounts meeting or exceeding the Federal Minimum Wage for all work duties performed and that Defendants' failure to pay Plaintiffs wages was unlawful in direct violation of the FLSA.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Minimum Wage)

43. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

44. Defendants, as Plaintiffs' employers, were obligated to pay the Plaintiffs for all hours worked at an hourly wage at least equal to that of the Federal Minimum Wage, $7.25 per hour ("Federal Minimum Wage").

45. As noted above, Plaintiffs worked full time (approximately 35-40 hours per week) from about July 2016 through about October 2016 for which Defendants failed to pay Plaintiffs any wages in direct violation of the FLSA requirement to pay wages for hours worked at an hourly rate not less than the Federal Minimum Wage.

46. Defendants each qualified as Plaintiffs' employer under the FLSA and Defendants' failure to pay Plaintiffs Federal Minimum Wage compensation as required by FLSA was not the product of good faith and Defendants had no reasonable grounds for believing their failure to pay Plaintiffs the Federal Minimum Wage complied with the FLSA.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count I for unpaid FLSA Minimum Wage compensation in such an amount as are proven at trial, plus an

equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT II
## NEGLIGENT MISREPRESENTATION

47. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

48. Throughout the period each Plaintiff was employed by Defendants, a special relationship was developed between each of the Plaintiffs and Defendants, including Potarazu (in his individual capacity and in his official capacity as an officer of Vitalspring and Enziime) and Sherlock (in his individual capacity and in his official capacity as an officer of Vitalspring and Enziime) beyond the context of a mere employer and employee relationship.

49. Through their actions and words directly to Plaintiffs and through agents and assigns to Plaintiffs, each of the Plaintiffs was influenced by Potarazu and Sherlock to believe that Potarazu and Sherlock were each sophisticated business persons, and Potarazu and Sherlock represented themselves to Plaintiffs as such.

50. Each of the Plaintiffs relied heavily upon Potarazu and Sherlock's superior business experience, their capacity as officers and agents acting on behalf of Vitalspring and Enziime, and their knowledge of Vitalspring and Enziime's sales and fundraising pipeline and product maturity in deciding to continue in Defendants' employ, notwithstanding that Defendants had previously been erratic, inconsistent, and delinquent in paying Plaintiffs' salary.

51. Further, because a relationship of trust, admiration, and confidence between Plaintiffs and Potarazu and Sherlock (both in their individual capacity and in their capacity as officers and agents on behalf of Vitalspring and Enziime) existed, Plaintiffs relied heavily upon Potarazu and Sherlock's repeated representations to each of the Plaintiffs (both in person and

through agents and assigns) that Vitalspring and Enziime was succeeding and was not in a dire financial condition and that each of the Plaintiffs would receive and be paid their full salary if the Plaintiffs continued in Defendants' employ, notwithstanding that Defendants had previously been erratic, inconsistent, and delinquent in paying Plaintiffs' salary.

52. The foregoing establishes a special relationship and a duty of care between Defendants, including Potarazu (in his individual capacity and in his capacity as an offer of Vitalspring and Enziime) and Sherlock (in his individual capacity and in his capacity as an officer of Vitalspring and Enziime) and each of the Plaintiffs regarding Defendants' representations and promises to Plaintiffs regarding Plaintiffs' entitlement to full compensation for all work duties performed.

53. Defendants, despite their duty of care, negligently made false representations to Plaintiffs, *to wit*, promising Plaintiffs that Vitalspring and Enziime were succeeding businesses and were not in dire financial conditions and that each of the Plaintiffs would each receive full payment of all promised salaries and other wages if Plaintiffs would continue in Defendants' employ during the period Plaintiffs were not receiving regularly scheduled wages and forego finding and securing alternative employment.

54. Defendants' representations were intended to induce Plaintiffs to remain in Defendants' employ despite Defendants' past actions causing erratic, inconsistent, and delinquent payment of Plaintiffs' salaries.

55. Because of Defendants' representations, Plaintiffs were enticed and persuaded to continue in their employment with Defendants and forego alternative employment opportunities.

56. At the time Defendants promised to pay Plaintiffs all wages due and confirmed and re-represented to Plaintiffs that each of the Plaintiffs would receive full and timely payment

of their salaries and all other forms of compensation due, Defendants had knowledge that the representations were false and not were formed in reliance upon any reasonable facts and that Plaintiffs would rely on the false representations regarding Defendants' intention to pay Plaintiffs their compensation including wages or any other form of compensation.

57. Plaintiffs were reasonable and justified in relying upon Defendants' false representations.

58. In reliance on Defendants' false representations, Plaintiffs forewent alternative employment options and continued in Defendants' employ.

59. As set forth above, Defendants failed and refused to act in conformance with their promises and representations to the Plaintiffs that the Plaintiffs would receive their full compensation including wages and other promised compensation and Plaintiffs have been substantially damaged by Defendants' false representations and their reliance thereon. Such damage was proximately caused by Defendants' negligence.

WHEREFORE, Each Plaintiff demands judgment against Defendants, jointly and severally, on Count II, for compensatory damages due to each Plaintiff in the amount of Two Hundred Thousand ($200,000.00), plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT III
## BREACH OF CONTRACT

60. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

61. Plaintiffs assented to employment agreement with Vitalspring and later either directly or by assignment with Enziime in which Vitalspring and/or Enziime agreed to pay each Plaintiff per a pre-determined and mutually agreed upon compensation structure.

62. As set forth above, the compensation structure agreed upon obligated Vitalspring and later Enziime to pay Plaintiffs a pre-determined annual salary rate, earned and accrued paid time off, agreed upon stock options, agreed upon fringe benefits including medical insurance, agreed upon contributions to retirement and/or profit sharing accounts, and other specifically agreed upon compensation.

63. As set forth above, Yona, as a legal successor and continuation of Vitalspring and Enziime, was assigned and took over legal contractual responsibilities to fulfil the contractual duties and obligations of Vitalspring and Enziime to pay each of the Plaintiffs all consideration due under each employment contract.

64. As set forth above, each Plaintiff performed, in a workmanlike manner, all contractual duties and obligations it owed to Vitalspring, Enziime, and Yona for which full consideration is now due and owing.

65. As set forth above, without excuse or legal justification, Vitalspring, Enziime, and Yona have failed to pay Plaintiffs agreed upon contractual compensation due and owing to Plaintiffs.

66. Vitalspring, Enziime, and Yona's failure and refusal to pay Plaintiffs compensation due and owing as per agreement between the parties (or as assigned to the obligor) constitutes a material breach of Plaintiffs' employment contracts from which Plaintiffs have suffered substantial damages.

WHEREFORE, Plaintiffs prays that that each Plaintiff be awarded judgment on Count III of this Complaint against Defendants Vitalspring, Enziime, and Yona, jointly and severally, for breach of contract in such an amount to be proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

# COUNT IV
# QUANTUM MERUIT

67. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

68. In the alternative to the above Count for breach of contract, should it be determined that Vitalspring, Enziime, and/or Yona did not have a valid or enforceable contract with any of the Plaintiffs for payment of employment compensation, or that Plaintiffs are not entitled to relief against Vitalspring, Enziime, and/or Yona for breach of contract, Plaintiffs performed services for the benefit of Vitalspring, Enziime, and Yona's under circumstances in which Plaintiffs and Vitalspring, Enziime, and Yona reasonably expected that Plaintiffs would be fairly and reasonably compensated by Vitalspring, Enziime, and/or Yona for all services rendered.

69. It would be unfair and inequitable for Vitalspring, Enziime, and Yona to receive the value of Plaintiffs' services without paying Plaintiffs full and reasonable compensation therefor.

WHEREFORE, Plaintiffs pray they be awarded judgment on Count IV of this Complaint against Defendants Vitalspring, Enziime, and Yona, jointly and severally, in such an amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## JURY DEMAND

Plaintiffs request a trial by jury on all facts so triable.

Respectfully submitted,

_____
Gregg C. Greenberg, VA Bar No. 79610
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone: 301-587-9373
Fax: 240-839-9142
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiffs*